533 A.2d 322

**WILD WORLD, INC., et al.**

v.

**COMPTROLLER OF the TREASURY.**

No. 350, Sept. Term, 1987.

Court of Special Appeals of Maryland.

Nov. 13, 1987.

Certiorari Denied Feb. 10, 1988.

**162**

Matt P. Lavine (John A. Lally and Zanecki, Lally & McDonough, on the brief), Landover, for appellants.

Deborah B. Bacharach, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Linda Koerber Boyd and Gaylin Soponis, Asst. Attys. Gen., on the brief), Baltimore, for appellee.

Argued before MOYLAN, WILNER and WEANT, JJ.

WILNER, Judge.

We have before us a simple, but important, question of statutory interpretation. It concerns the admission and amusement tax, which, for convenience, we shall refer to as the admissions tax, authorized by Md.Code Ann. art. 81, §§ 402–411 and imposed by local ordinance. In particular, the question is whether and to what extent the "additional" admissions tax authorized by § 402(c) is to be counted for purposes of the maximum "rate of tax" set by § 403. At one time, the answer to that question was very clear; unfortunately, in an attempt to clarify other provisions in

the admissions tax law, the General Assembly, in 1972, made it unclear.

We can frame the question by examining pertinent parts of three provisions. Sections 402(a) and (b), respectively, allow counties and incorporated municipalities to levy a tax "on the gross receipts of every person ... obtained from sources within the county [or municipality] derived from the amounts charged for" admission to certain types of places described in those subsections.[1]  The tax, though imposed locally, is to be collected by the Comptroller.

Section 402(c) authorizes the counties and incorporated cities and towns to levy

"an additional tax of five cent[s] (5¢) for each person provided with an admission without charge or at reduced rates whenever a charge for admission is made to any other person not in excess of fifty cents (50¢); and a tax of ten cents (10¢) whenever a charge [f]or admission to such other persons is in excess of fifty cents (50¢), but not in excess of one dollar ($1.00); and a tax of fifteen cents (15¢) whenever a charge for admission to such other person is in excess of one dollar ($1.00)."

That tax also is to be collected by the Comptroller.

Finally, § 403(a) provides, in relevant part, that: "The rate of tax imposed under § 402 shall not exceed ten percent (10%) of the gross receipts of every person, firm or corporation subject to the tax...."

Prince George's County has imposed a tax under § 402(a) at the rate of 10%.  It has also imposed the "additional" tax authorized by § 402(c).

Appellant Wild World, Inc. operates a water amusement park in Prince George's County.  To enter the park, a patron must buy an admission ticket that has a fixed price of more than $1.00.  Not everyone pays the full fixed price,

---

1.  To the extent that an incorporated municipality within a county imposes its own tax, the county may not levy the county tax on receipts obtained from sources within the municipality.

however. Through the use of coupons issued by appellant and made generally available to the public, if one person pays the full admission price, other persons in his or her group may enter the park at a reduced price. Indeed, the record indicates that some 60–70% of the tickets actually sold are at a reduced price.

Appellant collected from patrons and remitted to the Comptroller 10% of the gross receipts it received from all ticket sales, including 10% of the revenue from reduced price admissions. It did not collect or remit, however, the additional 15¢/ticket imposed pursuant to § 402(c), arguing that the collection of that additional tax would cause the total tax to exceed the 10% maximum rate established by § 403(a). Appellant's argument was rejected by the Comptroller, by the Maryland Tax Court, and by the Circuit Court for Prince George's County.

The issue, as we said at the outset, is purely a legal one of statutory interpretation; there is no dispute of underlying fact, no contest over the Comptroller's arithmetic, and no issue requiring any administrative expertise. Appellant looks at the language of § 403(a)—that "[t]he rate of tax imposed under § 402 shall not exceed [10%] of the gross receipts," points out that the "additional" tax is imposed under § 402, and concludes, *ergo*, that it is subject to the 10% limitation. The Comptroller counters with what is essentially a two-part argument. First, he says, the limitation in § 403(a) is on the "rate of tax" imposed under § 402; the tax authorized by § 402(a) and (b) *is* a rate applied to gross receipts, but the tax under § 402(c) is a "flat" tax on specific amounts and therefore not a "rate." Second, he urges that, to the extent there is any ambiguity, we should consider the general legislative intent which, he claims, supports his reading of the statutes. We agree with the Comptroller in both respects.

Section 402(c) is hardly a model of clarity, and so, in approaching the issue, it might be helpful to examine, in some more concrete fashion, how these provisions operate (or at least how the Comptroller urges they should operate).

If an amusement operator—a park owner such as appellant—had a fixed admission price for adults of $5.00 and a separate fixed price for children of $2.00 and the $2.00 reduced price for children was not dependent upon an adult admission, the total tax would be under § 402(a) or (b). If an adult and one child entered under that arrangement, the tax would be 70¢—50¢ on the adult ticket and 20¢ on the child's ticket, assuming a 10% rate. No tax would be imposed under § 402(c) because the reduced price for the child's ticket was not dependent upon the admission of any other person. That would be true as well if the child were admitted free; in that event, the total tax would be 50 for the adult's ticket.

If, however, the $2.00 admission price for children was dependent upon an adult paying the $5.00 charge, both taxes would be imposed. In that event, under § 402(a) or (b), 50¢ would be collected on the adult's ticket and 20¢ would be collected on the child's; in addition, another 15¢ would be collected on the child's reduced price admission based on the fact that the price of the adult admission exceeded $1.00.[2] If the child was admitted free, a 50¢ tax under § 402(a) or (b) would be collected on the adult's ticket and 15¢ would be collected under § 402(c) on the child's admission.

Using these examples, one can see that the tax under § 402(c) is truly an "additional" tax. If the tax rate imposed pursuant to § 402(a) or (b) is at the maximum 10% permitted under § 403(a), the effect of imposing the tax under § 402(c) would, in virtually every case, result in a gross tax in excess of 10% of appellant's gross receipts. Only if the tax rate imposed under § 402(a) or (b) were less than the maximum allowed rate of 10% could the tax under § 402(c) be collected without the combined tax exceeding

---

**2.** Although the tax is on the reduced price admission, it is determined by the price of the required regular price admission. If the child's ticket was 50¢ (or was free), for example, and the parent's ticket was 75¢, the tax under § 402(c) would be 10¢.

10% of gross receipts. Whether § 403(a) permits the counties and incorporated municipalities to impose the full 10% under § 402(a) or (b) *and* impose and collect the "additional" tax under § 402(c) is the issue before us.

The primary canon of statutory construction has always been to give effect to the intention of the Legislature. *State v. Fabritz*, 276 Md. 416, 421, 348 A.2d 275 (1975); *Haskell v. Carey*, 294 Md. 550, 556, 451 A.2d 658 (1982). In *Kaczorowski v. City of Baltimore*, 309 Md. 505, 525 A.2d 628 (1987), the Court explained that, while a court should follow the plain meaning of the words used by the Legislature, the "rule is not rigid." A statute must be read, not in isolation, but to give effect to the purpose intended by the Legislature. At 514–15, 525 A.2d 628, the Court observed:

"When we pursue the context of statutory language, we are not limited to the words of the statute as they are printed in the Annotated Code. We may and often must consider other 'external manifestations' or 'persuasive evidence,' including a bill's title and function paragraphs, amendments that occurred as it passed through the legislature, its relationship to earlier and subsequent legislation, and other material that fairly bears on the fundamental issue of legislative purpose or goal, which becomes the context within which we read the particular language before us in a given case."

Under this view, a construing court appears to be limited to the precise words of the statute only when they are "clearly consistent with [the] apparent purpose (and not productive of any absurd result)...." *Id.* at 515, 525 A.2d 628.

In order to gain a full appreciation of the legislative purpose behind §§ 402 and 403, one must examine some of the legislative history of those provisions. Although these provisions, or their precursors, have been part of the Maryland law since 1936, we may begin with 1968.

The law at that time provided for both a State and a local tax on admissions. Md.Code Ann. art. 81, § 402 (1965 Repl. Vol., 1968 Supp.) imposed a State tax of one-half of one

percent on gross receipts from admissions. Section 403 authorized Baltimore City, 13 of the counties, and the incorporated municipalities in those 13 counties to levy their own tax on such receipts. Although any local tax was to be levied "to the same extent and in the same manner as that levied by the State," the "rate of tax which may be levied" by the subdivisions "need not be the same as that imposed by the State." Section 403(a). The Comptroller was to collect both the State and the local tax. Section 404 levied an "additional" State tax on free and reduced price admissions at precisely the rate stated currently in § 402(c). There was no counterpart provision to current § 403(a).

By 1969 Md.Laws, ch. 161, the General Assembly increased the State tax to 4½%. The "additional" State tax on free and reduced price admissions provided for in § 404 was not affected. In a subsequent special session in December, 1969, the Legislature again amended § 402 to tax some types of admissions at the previous rate of ½% rather than at the new rate of 4½%.

In 1971, the Legislature rewrote the law once again, on both an interim and, what it thought would be, a permanent basis. For one year—fiscal year 1972—it reduced the State tax under § 402 to ½%, the proceeds of which, after deducting the cost of administration, the Comptroller was to pay over to the subdivisions. The local tax, authorized under § 403, and the "additional" State tax imposed under § 404 were not disturbed for that year. See 1971 Md.Laws, ch. 429, Sec. 1. Effective July 1, 1972, however, the whole structure was changed. *Id.*, Secs. 2 and 3. The State tax was repealed outright. Section 402 was rewritten to authorize the counties and incorporated cities and towns to impose a local admissions tax. The remaining sections dealing with the admissions tax were repealed, thereby leaving no provision for (1) the Comptroller to collect the tax, (2) any maximum or fixed rate of tax, or (3) the "additional" tax on free or reduced price admissions. All of the law governing the admissions tax would have been contained in the newly rewritten § 402.

The Legislative Council—the then-counterpart of the Legislative Policy Committee (see Md.Code Ann. art. 40, §§ 27–40, 1965 Repl. Vol.)—evidently realized that the Legislature had acted somewhat precipitously, and so it proposed a bill to the 1972 session that would have added new sections 403 and 404 (1) to set a maximum rate for the local tax of 10%, (2) within that maximum, to allow the subdivisions to tax various admissions at different rates (§ 403), and (3) to allow the local governments to have the tax collected by the Comptroller (§ 404). See Report to the General Assembly of 1972, Legislative Council of Maryland, in particular committee reports, minutes, and proposed bill concerning Item 66(2).

The simple bill proposed by the Legislative Council (H.B. 31) was substantially amended during the legislative process, however, resulting in another wholesale rewriting of the law.

The final version (1972 Md.Laws, ch. 689) took account of the three concerns noted by the Legislative Council. With amendments not relevant here, §§ 403 and 404 were enacted as proposed by the Legislative Council.[3] The Legislature also decided to add back into the law (or, more appropriately, to block the deletion from the law) a number of other provisions that would have been repealed under the 1971 Act.[4] See, for example, §§ 405–411 of art. 81 dealing with exemptions from the tax, the manner of reporting and collection, penalties for evasion of the tax, and remittance of the proceeds of the tax by the Comptroller. One of the provisions added back was the "additional" tax at issue here. Unfortunately, and for reasons shrouded in the collective mind of the House Committee on Ways and Means,

---

**3.** Section 404(a) was amended to *require* the Comptroller to collect the tax; the initial bill provided that the Comptroller "may" collect the tax at the request of the local legislative body.

**4.** It must be remembered that sections 2 and 3 of the 1971 Act never actually took effect. They were to become effective on July 1, 1972, but ch. 689, which took effect June 30, 1972, intervened and replaced that Act.

that provision was added to § 402, as subsection (c), rather than placed in a separate section, as it formerly had been.

It is, of course, that placement in § 402 that has created the issue before us, for no corresponding amendment was made to § 403(a). Had the "additional tax" been authorized in a separate section, there could be no doubt (and indeed appellant conceded at oral argument) that it would not be subject to, or taken into account for purposes of, § 403(a). What effect, then, do we give to this placement of the language?

There is no independent evidence or indication in any of the available legislative history that the Legislature intended to change this aspect of the law from what it had been. The "additional" tax on free or reduced price admissions had been part of the admissions tax law since the original enactment of that law in 1936. See Md.Laws 1936 (Spec. Sess.), ch. 10, § 3; Md.Laws 1937, ch. 231, § 2; Md.Laws 1939, ch. 277, § 4. Indeed, despite changes in the rate of the basic tax from time to time (see *ante*), the amount or rate of the "additional" tax—5¢ if the principal ticket price was 50¢ or less, 10¢ if that ticket price was between 50¢ and $1.00, and 15¢ if that ticket price was over $1.00—has remained the same since 1936. In the title to ch. 689, as amended to reflect the amendments made to the substantive provisions, the Legislature made clear that one purpose of the bill was "to provide for a tax on admissions without charge or at reduced rates."

If appellant's position prevails, that intent would be entirely frustrated. As we observed earlier, if the county or municipality imposed the general admissions tax at the full 10% rate allowed by § 403(a), it could not, as a practical matter, also impose or collect the "additional" tax under § 402(c), for that would necessarily result in a tax liability in excess of 10% of gross receipts. One section or the other, then—§ 402(c) or § 403(a)—would be rendered nugatory, which is hardly a desirable reading of the statute or one that would seem to comport with legislative intent.

That is not the extent of the problem, however. Even if the county or municipality imposed the general admissions tax at a rate less than 10%, unless that rate were significantly less than 10%, it would be practically impossible to administer both taxes, for one could never be certain at the time of admission whether the "additional" tax under § 402(c) would, in fact, cause the total tax to exceed 10% of gross receipts. At what point during the reporting period would the amusement owner stop collecting the "additional" tax? Appellant's response, at oral argument, was that he would continue to collect the "additional" tax from patrons but that if, at the end of the reporting period, it turned out he had collected too much, he would simply keep the excess as though it were part of the admission price. We certainly do not share that view. There is no indication that the Legislature intended to have amusement owners collect a tax from patrons and keep any part of it as a windfall.

In summary, then, it seems clear to us that the Legislature could not have intended, simply by placing the "additional" tax in § 402, to have the statute read as appellant desires. To be complete, however, we look to see if the Comptroller's reading is permitted by the statute.

Section 403(a) states that the "rate of tax" imposed under § 402 shall not exceed 10% of the gross receipts of the person subject to the tax. That clearly applies to the tax imposed under § 402(a) or (b), for the tax authorized by those subsections is plainly stated to be "on the gross receipts" of the taxpayer. The tax authorized by § 402(c) is *not* based on the gross receipts, however. It is on individual admissions and is neither measured by nor has any relationship to either the amount actually received for the reduced price (or free) admission (see n. 2, *ante*), or to the taxpayer's gross receipts from any or all admissions. Moreover, it is neither expressed nor really expressible as a "rate." If the measuring full price is 10¢, the "rate," based on a 5¢ tax, would be 50%; if the measuring full price is 50¢, the "rate," based on a 5¢ tax, would be 10%; if the

measuring full price is 60¢, the "rate," based on a 10¢ tax, would be 16.7%; if the measuring full price is $10.00, the "rate," based on a 15¢ tax, would be 1.5%.

On this analysis, it is apparent to us that the Comptroller's view of the statutory interplay is fully supported by a literal reading of § 403(a). That, together with the absurd or inconsistent results flowing from appellant's interpretation, lead us to conclude that the judgment of the Circuit Court should and must be affirmed.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.